UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DARLENE WHITT, and HAROLD WHITT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-254-TWP-HBG |
| | ) | |
| K-VA-T FOOD STORES, INC., d/b/a | ) | |
| FOOD CITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Compel Discovery Responses [Doc. 38]. The parties appeared before the Court on January 23, 2019, for a motion hearing. Attorneys Zachary Burkhalter and Alexander Burkhalter appeared on behalf of Plaintiffs. Attorneys Eric Harrison and Mary Moffatt appeared on behalf of Defendant. Accordingly, for the reasons set forth below, Plaintiffs' Motion to Compel [**Doc. 38**] is **GRANTED IN PART AND DENIED IN PART.**

## I.  BACKGROUND

The Complaint [Doc. 1] in this matter was filed on June 12, 2017. The Complaint alleges that on July 4, 2016, at approximately 9:30 p.m., Plaintiff Darlene Whitt entered the Food City in Tazewell, Tennessee, as a customer to purchase cat food, tomatoes, and hamburger buns. [Doc. 1 at ¶ 6]. After Plaintiff Darlene Whitt paid at the cash register, she stepped in front of the cash register to walk toward the exit to leave the store. [*Id.* at ¶ 8]. Plaintiff Darlene Whitt walked approximately two to three feet when her feet shot from under her on the wet and slippery floor.

[*Id.* at ¶ 9]. The Complaint alleges that she landed hard, sustaining severe and permanent injuries. [*Id.*]. The Complaint states that Defendant's agents and employees caused the floor to be wet and slippery from mopping. [*Id.* at ¶ 10]. The Complaint avers that there were no signs posted to warn customers that the floor around the cash register was wet at the time Plaintiff Darlene Whitt fell. [*Id.* at ¶ 12].

The Complaint states that after Plaintiff Darlene Whitt fell, Defendant's employee, Jeremy Kent, stated to the Assistant Manager, Arnold Sexton, that he (Sexton) is "going to have to make the boys do better on the signs." [*Id.* at ¶ 18]. After Plaintiff Darlene Whitt realized that she was seriously injured, she asked Sexton, "What if I need to go to the hospital, what am I supposed to do?" [*Id.* at ¶ 20]. Sexton responded, "We have to review the tape in the morning to see how the injury occurred." [*Id.*]. The next morning, Plaintiff Darlene Whitt called Sexton to ask if the videotape had been reviewed, and Sexton stated that there was no videotape due to an obstruction and something had blocked the view. [*Id.*]. Plaintiff was told to contact Tammy Haggy. [*Id.*].

The Complaint states that a few days later, Plaintiff Darlene Whitt spoke to Tammy Haggy, who stated that there was no videotape due to an electrical glitch because the power went off. [*Id.* at ¶ 21]. Subsequently, on August 31, 2016, Plaintiffs' attorneys sent Defendant a Notice of Non-Spoliation requesting that Defendant preserve potentially relevant evidence, including any and all videotapes and/or security footage from July 4, 2016, showing the cash register and the areas in front of the cash registers at Defendant's store. [*Id.* at ¶ 32]. The Complaint alleges Defendant failed to take steps to preserve the potentially relevant evidence. [*Id.* at ¶ 34].

The Complaint alleges that Defendant caused or created the unreasonably dangerous condition by mopping the floor and making it wet and by failing to warn of the dangerous condition. [*Id.* at ¶ 26]. The Complaint states that Defendant owed Plaintiff Darlene Whitt a duty

of reasonable care under all circumstances and that Defendant breached this duty. [*Id.* at ¶ 28]. The Complaint states that as a result of Defendant's negligence, Plaintiff Darlene Whitt sustained injuries and incurred medical bills and continues to suffer great pain of the body and mind. [*Id.* at ¶ 30]. In addition, Plaintiff Harold Whitt has sustained loss of consortium. [*Id.* at ¶ 31].

In the present matter, the parties dispute the relevancy and proportionality of Plaintiffs' discovery requests. Plaintiffs have filed a Motion to Compel Discovery Responses [Doc. 38]. Defendant filed a Response [Doc. 40] to the Motion, and Plaintiffs replied [Doc. 42]. The Court also granted Defendant leave to file a Supplemental Response [Doc. 48], and Plaintiffs filed a Supplemental Reply [Doc. 50]. The Court has reviewed all of these filings, including the exhibits attached thereto.

## II. ANALYSIS

The Court has considered the parties' filings, in addition to the oral arguments presented at the hearing. Accordingly, for the reasons set forth below, Plaintiffs' Motion [**Doc. 38**] is **GRANTED IN PART AND DENIED IN PART.**

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.,* 319 F.R.D. 240, 242 (N.D. Ohio 2017) *(quoting Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir.

1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery requests is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.,* 474 F.3d 288, 305 (6th Cir. 2007)).

Given the above guidance, the Court will now turn to the issues in this case. At the hearing, the Court inquired as to what specific discovery remains in dispute. Plaintiffs stated that there are two primary issues: (1) Plaintiffs' discovery requests relating to the surveillance system, and (2) Plaintiffs' Third Request for Document Production. Specifically, with respect to the latter issue, Plaintiffs explained that on several requests, Defendant responded that it was not aware of any documents, as opposed to stating whether such documents existed. The Court agrees with Plaintiffs and finds that Defendant **SHALL** file a supplemental response, within fourteen (14) days of entry of this Memorandum and Order, to Plaintiffs' Third Requests for Production of Documents and affirmatively state that "there are no documents."

Further, Plaintiffs requested that Defendant produce its lease agreement with the landowner. Plaintiffs explained that the landowner could have glossed or buffed the floor where Plaintiff Darlene Whitt fell. Defendant argued that the lease agreement does not contain any information that is relevant to this case. The Court agrees with Defendant and finds such information not relevant or proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b).

Plaintiffs also requested the timecards for the employees who worked on July 5, 2016, the day after Plaintiff Darlene Whitt fell. Defendant responded that they had already produced the timecards of the employees who were present on the day of the accident but that timecards for the

employees who worked on the following day are not relevant. The Court finds that Defendant has already produced all timecards for employees who were present on the day of the accident. Plaintiffs allege that the videotape of the fall was to be reviewed by Defendant the following day. For that reason, the Court finds that the timecards, or hours worked records, for the employees who worked the day after the accident are relevant and proportional to the needs of this case, and they **SHALL** be produced, if still in existence, within fourteen (14) days of the instant Memorandum and Order.

Further, Plaintiffs argued that they had requested copies of all safety procedures contained in the manual. Defendant explained that it had produced excerpts relating to safety procedures, but it did not produce the entire store manual because much of the information contains irrelevant and proprietary information (i.e., pricing and maintaining temperatures for certain foods). Defendant stated that it was willing to allow counsel for Plaintiffs to review the entire manual at the store and that counsel could makes copies of any relevant provisions. The Court finds that Defendant has produced the relevant parts of the store manual. If Plaintiffs would like to review the whole manual, their counsel may go to the store and review the whole manual.

In addition, during the hearing, Plaintiffs requested information with respect to the surveillance system. Defendant stated that it provided the manual for the camera, but it was not sure what information the manual included. The Court finds that Defendant **SHALL** provide to Plaintiff, if it has not done so already, the make and model number of the surveillance system camera and back-up power batteries (if there are any) for the system. Defendant **SHALL** provide this information within fourteen (14) days of entry of this Memorandum and Order.

Further, during the hearing, Defendant agreed to produce a ten second video exemplar of the surveillance system's view of the fall location. The Court finds, however, that Defendant's

attorneys do not need to produce any photographs, or videos, that the attorneys took at the scene view in April 2018.

Finally, Plaintiffs have requested their attorney's fees and costs incurred by bringing the Motion to Compel. If the court grants a motion to compel or the discovery is provided after the motion was filed, the court must issue an award of the reasonable expenses incurred in making the motion, unless the movant failed to confer in good faith before filing the motion, the opposing party's objection was substantially justified, or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5). The Court declines to award attorney's fees at this time because the parties genuinely disputed whether Defendant's responses were deficient. *See* Fed. R. Civ. P. 37(a) Advisory Committee Notes to 1970 Amendment (where "the dispute over discovery is genuine, though ultimately resolved one way or the other by the court . . . the losing party is substantially justified in carrying the matter to court.").

### III. CONCLUSION

Accordingly, for the reasons explained above, the Court finds Plaintiffs' Motion to Compel Discovery Responses [**Doc. 38**] **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge